UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| ERRICKA GONZALEZ, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>BANNER CORPORATION d/b/a BANNER BANK,<br><br>Defendant. | NO.<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY DEMAND** |

COMES NOW the Plaintiff Erricka Gonzalez, by counsel, for her Class Action Complaint against the Defendant, alleges as follows:

## I. INTRODUCTION

1.1     This is a civil action seeking monetary damages, restitution and declaratory relief from Defendant, Banner Corporation d/b/a Banner Bank ("Banner"), arising from the unfair and unlawful assessment and collection of Overdraft Fees ("OD Fees"), which Banner charges when it pays certain items, and of insufficient funds fees ("NSF Fees"), which Banner charges when it returns items unpaid.

1.2     Ms. Gonzalez brings this action on behalf of herself and a class of similarly situated consumers against Banner arising from a) the assessment OD Fees on transactions that did not

CLASS ACTION COMPLAINT- Page 1

FRIEDMAN | RUBIN•
1109 FIRST AVENUE, SUITE 501
SEATTLE, WA  98101-3614
(206) 501-4446

actually overdraw the account, which is barred by the contract and is deceptive; and b) the assessment of more than one NSF Fee on the same item.

1.3     Through the imposition of these fees, Banner makes millions of dollars. These fees are, by definition, most often assessed on consumers struggling to make ends meet with minimal funds in their accounts. These practices work to catch accountholders in an increasingly devastating cycle of bank fees.

1.4     Ms. Gonzalez and other Banner customers have been injured by Banner's practices. On behalf of herself and the putative class, Ms. Gonzalez seeks damages, restitution and injunctive relief for Banner's breach of contract and violation of Washington's consumer protection law.

## II.  PARTIES, VENUE, AND JURISDICTION

2.1     Ms. Gonzalez is a natural person and resides in Sacramento, CA. Ms. Gonzalez has a personal checking account with Banner.

2.2     Banner is one of the largest banks in Washington. Banner is headquartered in Walla Walla, Washington and maintains branch locations across the state of Washington.

2.3     This Fairness Act of 2005.  Pursuant to 28 U.S.C. §§ 1332, including but not limited to 28 U.S.C. §§ 1332 (d)(2) & (6), this Court has jurisdiction because (a) the proposed Class is comprised of at least 100 members; (b) at least one member of the proposed Class resides outside of the State of Washington; and (3) the aggregate claims of the members of the proposed Class exceed $5 million, exclusive of interest and costs.

2.4     Venue is proper in this District pursuant to, inter alia, 28 U.S.C. § 1391 because Banner is subject to personal jurisdiction here and regularly conducts business in this District, and because a substantial part of the events or omissions giving rise to the claims in this Complaint occurred in this District.

FRIEDMAN | RUBIN•
1109 FIRST AVENUE, SUITE 501
SEATTLE, WA  98101-3614
(206) 501-4446

### III.  CLASS ACTION ALLEGATIONS

3.1     Ms. Gonzalez brings this action on behalf of herself and all others similarly situated pursuant to Rule 23 of the Federal Rules of Civil Procedure.  This action satisfies the numerosity, commonality, typicality, adequacy, predominance and superiority requirements of Rule 23.

3.2     The proposed classes are defined as:

All Banner checking account holders who, during the applicable statute of limitations, were charged OD Fees on items that did not overdraw their checking accounts (the "OD Class").

All Banner checking account holders who, during the applicable statute of limitations, were charged more than one NSF Fee on the same item (the "NSF Class").

All Banner checking account holders in the state of Washington who, during the applicable statute of limitations, were charged OD Fees on items that did not overdraw their checking accounts (the "Washington OD Subclass").

All Banner checking account holders in the state of Washington who, during the applicable statute of limitations, were charged more than one NSF Fee on the same item (the "Washington NSF Subclass").

All Banner checking account holders in the state of California who, during the applicable statute of limitations, were charged OD Fees on items that did not overdraw their checking accounts (the "California OD Subclass").

All Banner checking account holders in the state of California who, during the applicable statute of limitations, were charged more than one NSF Fee on the same item (the "California NSF Subclass").

The classes are collectively referred to as the "Classes."

3.3     Ms. Gonzalez reserves the right to modify or amend the definition of the proposed Class before the Court determines whether certification is appropriate.

3.4     Excluded from the Classes are Banner, its parents, subsidiaries, affiliates, officers and directors, any entity in which Banner has a controlling interest, all customers who make a timely election to be excluded, governmental entities, and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

CLASS ACTION COMPLAINT- Page 3

FRIEDMAN | RUBIN•
1109 FIRST AVENUE, SUITE 501
SEATTLE, WA 98101-3614
(206) 501-4446

3.5     The members of the Classes are so numerous that joinder is impractical.  The Classes consist of thousands of members, the identity of whom is within the knowledge of and can be ascertained only by resort to Banner's records.

3.6     The claims of Ms. Gonzalez are typical of the claims of the Classes in that she, like all Class members, was subjected to the same challenged conduct. Ms. Gonzalez, like all Class members, has been damaged by Banner's misconduct in that she paid improper NSF Fees. Furthermore, the factual basis of Banner's misconduct is common to all Class members and represents a common thread of unfair and unconscionable conduct resulting in injury to all members of the Classes.

3.7     There are numerous questions of law and fact common to the Class and those common questions predominate over any questions affecting only individual Class members.

3.8     Among the questions of law and fact common to the Class is whether Banner:

        a.      Charged OD Fees on items when those items did not overdraw accounts and more than one NSF Fee on the same item;

        b.      Breached its contract with consumers by charging OD Fees on items when those items did not overdraw accounts and charging more than one NSF Fee on the same item;

        c.      Breached the covenant of good faith and fair dealing by charging OD Fees on items when those items did not overdraw accounts and charging more than one NSF Fee on the same item;

        d.      Violated Washington and California consumer protection law by charging OD Fees on items when those items did not overdraw accounts and charging more than one NSF Fee on the same item;

        e.      Whether Ms. Gonzalez and the Classes were damaged by Defendant's conduct and if so, the proper measure of damages.

3.9     Ms. Gonzalez is committed to the vigorous prosecution of this action and has retained competent counsel experienced in the prosecution of class actions and, in particular, class

CLASS ACTION COMPLAINT- Page 4

actions on behalf of consumers and against financial institutions.  Accordingly, Ms. Gonzalez is an adequate representative and will fairly and adequately protect the interests of the Class.

3.10    A class action is superior to other available methods for the fair and efficient adjudication of this controversy.  Since the amount of each individual Class member's claim is small relative to the complexity of the litigation, and due to the financial resources of Banner, no Class member could afford to seek legal redress individually for the claims alleged herein. Therefore, absent a class action, the Class members will continue to suffer losses and Banner's misconduct will proceed without remedy.  Moreover, given that the improper fees were assessed in a uniform manner, common issues predominate over any questions, to the extent there are any, affecting only individual members.

3.11    Even if Class members themselves could afford such individual litigation, the court system could not.  Given the complex legal and factual issues involved, individualized litigation would significantly increase the delay and expense to all parties and to the Court.  Individualized litigation would also create the potential for inconsistent or contradictory rulings.  By contrast, a class action presents far fewer management difficulties, allows claims to be heard which might otherwise go unheard because of the relative expense of bringing individual lawsuits, and provides the benefits of adjudication, economies of scale and comprehensive supervision by a single court.

## IV.  BANNER ASSESSES OVERDRAFT FEES ON ACCOUNTS THAT ARE NOT OVERDRAWN

**A.**    **Overview of Claim**

4.1    Plaintiff challenges Banner's practice of charging OD Fees on what are referred to in this complaint as "Authorize Positive, Purportedly Settle Negative Transactions" ("APPSN Transactions").

4.2    Here's how it works. At the moment debit card transactions are authorized on an account with positive funds to cover the transaction, Banner immediately reduces consumers' checking accounts for the amount of the purchase, sets aside funds in a checking account to cover that transaction, and as a result, the consumer's displayed "available balance" reflects that

FRIEDMAN | RUBIN•
1109 FIRST AVENUE, SUITE 501
SEATTLE, WA  98101-3614
(206) 501-4446

subtracted amount. As a result, customers' accounts will always have sufficient available funds available to cover these transactions because Banner has already sequestered these funds for payment.

4.3     However, Banner still assesses crippling OD Fees on many of these transactions and mispresents its practices in its account documents.

Despite putting aside sufficient available funds for debit card transactions at the time those transactions are authorized, Banner later assesses OD Fees on those same transactions when they purportedly settle days later into a negative balance. These types of transactions are APPSN transactions.

4.4     Banner maintains a running account balance in real time, tracking funds consumers have for immediate use. This running account balance is adjusted, in real-time, to account for debit card transactions at the precise instance they are made. When a customer makes a purchase with a debit card, Banner sequesters the funds needed to pay the transaction, subtracting the dollar amount of the transaction from the customer's available balance. Such funds are not available for any other use by the accountholder, and such funds are specifically associated with a given debit card transaction.

> Indeed, the entire purpose of the immediate debit and hold of positive funds is to ensure that there are enough funds in the account to pay the transaction when it settles, as discussed in the Federal Register notice announcing revisions to certain provisions of the Truth in Lending Act regulations: When a consumer uses a debit card to make a purchase, a hold may be placed on funds in the consumer's account to ensure that the consumer has sufficient funds in the account when the transaction is presented for settlement. This is commonly referred to as a "debit hold." During the time the debit hold remains in place, which may be up to three days after authorization, those funds may be unavailable for the consumer's use for other transactions.

Federal Reserve Board, Office of Thrift Supervision, and National Credit Union Administration, Unfair or Deceptive Acts or Practices, 74 FR 5498-01 (Jan. 22, 2009).

CLASS ACTION COMPLAINT- Page 6

4.5    That means when any *subsequent*, intervening transactions are initiated on a checking account, they are compared against an account balance that has already been reduced to account for any earlier debit card transactions. This means that many subsequent transactions incur OD Fees due to the unavailability of the funds sequestered for those debit card transactions. Still, despite keeping those held funds off-limits for other transactions, Banner improperly charges OD Fees on those APPSN Transactions, although the APPSN transactions ***always*** have sufficient available funds to be covered.

4.6    Indeed, the Consumer Financial Protection Bureau ("CFPB") has expressed concern with this very issue, flatly calling the practice "unfair" and/or "deceptive" when:

> A financial institution authorized an electronic transaction, which reduced a customer's available balance but did not result in an overdraft at the time of authorization; settlement of a subsequent unrelated transaction that further lowered the customer's available balance and pushed the account into overdraft status; and when the original electronic transaction was later presented for settlement, because of the intervening transaction and overdraft fee, the electronic transaction also posted as an overdraft and an additional overdraft fee was charged. Because such fees caused harm to consumers, one or more supervised entities were found to have acted unfairly when they charged fees in the manner described above. Consumers likely had no reason to anticipate this practice, which was not appropriately disclosed. They therefore could not reasonably avoid incurring the overdraft fees charged. Consistent with the deception findings summarized above, examiners found that the failure to properly disclose the practice of charging overdraft fees in these circumstances was deceptive. At one or more institutions, examiners found deceptive practices relating to the disclosure of overdraft processing logic for electronic transactions. Examiners noted that these disclosures created a misimpression that the institutions would not charge an overdraft fee with respect to an electronic transaction if the authorization of the transaction did not push the customer's available balance into overdraft status. But the institutions assessed overdraft fees for electronic transactions in a manner inconsistent with the overall net impression created by the disclosures. Examiners therefore concluded that the disclosures were misleading or likely to mislead, and because such misimpressions could be material to a reasonable consumer's decision-making and actions, examiners found the practice to be

FRIEDMAN | RUBIN•
1109 FIRST AVENUE, SUITE 501
SEATTLE, WA 98101-3614
(206) 501-4446

deceptive. Furthermore, because consumers were substantially injured or likely to be so injured by overdraft fees assessed contrary to the overall net impression created by the disclosures (in a manner not outweighed by countervailing benefits to consumers or competition), and because consumers could not reasonably avoid the fees (given the misimpressions created by the disclosures), the practice of assessing fees under these circumstances was found to be unfair.

Consumer Financial Protection Bureau, Winter 2015 "Supervisory Highlights."

4.7    There is no justification for these practices, other than to maximize Banner's overdraft fee revenue. APPSN Transactions only exist because intervening checking account transactions supposedly reduce an account balance. But Banner is free to protect its interests and either reject those intervening transactions or charge OD Fees on those intervening transactions— and it does the latter to the tune of millions of dollars each year. But Banner was not content with these millions in OD Fees. Instead, it sought millions *more* in OD Fees on these APPSN Transactions.

4.8    Besides being deceptive, unfair, and unconscionable, these practices breach promises made in Banner's adhesion contracts—contracts which fundamentally misconstrue and mislead consumers about the true nature of Banner's processes and practices. These practices also exploit contractual discretion to gouge consumers.

In plain, clear, and simple language, the checking account contract documents covering overdraft fees promise that Banner will only charge OD Fees on transactions that have insufficient funds to "cover" that transaction.

4.9    In short, Banner is not authorized by contract to charge OD Fees on transactions that have not overdrawn an account, but it has done so and continues to do so.

**B.    Mechanics of a Debit Card Transaction**

4.10    A debit card transaction occurs in two parts. First, authorization for the purchase amount is instantaneously obtained by the merchant from Banner. When a merchant physically or virtually "swipes" a customer's debit card, the credit card terminal connects, via an intermediary,

CLASS ACTION COMPLAINT- Page 8

to Banner, which verifies that the customer's account is valid and that sufficient available funds exist to cover the transaction amount.

4.11    At this step, if the transaction is approved, Banner immediately decrements the funds in a consumer's account and sequesters funds in the amount of the transaction but does not yet transfer the funds to the merchant.

4.12    Indeed, the entire purpose of the immediate debit and hold of positive funds is to ensure that there are enough funds in the account to pay the transaction when it settles, as discussed in the Federal Register notice announcing revisions to certain provisions of the Truth in Lending Act regulations:

> When a consumer uses a debit card to make a purchase, a hold may be placed on funds in the consumer's account to ensure that the consumer has sufficient funds in the account when the transaction is presented for settlement. This is commonly referred to as a "debit hold." During the time the debit hold remains in place, which may be up to three days after authorization, those funds may be unavailable for the consumer's use for other transactions.

Federal Reserve Board, Office of Thrift Supervision, and National Credit Union Administration, Unfair or Deceptive Acts or Practices, 74 FR 5498-01 (Jan. 22, 2009).

4.13    Sometime thereafter, the funds are actually transferred from the customer's account to the merchant's account.

4.14    Banner (like all credit unions and banks) decides whether to "pay" debit card transactions at authorization. After that, Banner is obligated to pay the transaction no matter what. For debit card transactions, that moment of decision can only occur at the point of sale, at the instant the transaction is authorized or declined. It is at that point—and only that point—when Banner may choose to either pay the transaction or decline it. When the time comes to actually settle the transaction, it is too late—the financial institution has no discretion and must pay the charge. This "must pay" rule applies industry wide and requires that, once a financial institution authorizes a debit card transaction, it "must pay" it when the merchant later makes a demand,

CLASS ACTION COMPLAINT- Page 9

FRIEDMAN | RUBIN•
1109 FIRST AVENUE, SUITE 501
SEATTLE, WA 98101-3614
(206) 501-4446

regardless of other account activity. *See* Electronic Fund Transfers, 74 Fed. Reg. 59033-01, 59046 (Nov. 17, 2009).

4.15    There is no change—no impact whatsoever—to the available funds in an account when this step occurs.

## C.    Banner's Account Contract

4.16    Plaintiff has a Banner checking account, which is governed by Banner's standardized "Deposit Account Agreement" ("Deposit Agreement"), attached hereto as **Exhibit A**, and "Debit Card Terms and Conditions" ("Debit Card Agreement"), attached hereto as **Exhibit B** (collectively, the "Account Documents").

4.17    Pursuant to the Debit Card Agreement:

> Each time that you make a Card transaction the merchant attempts to obtain an authorization. If your available balance is sufficient we will place a hold on your account and reduce your available balance by the amount of the Card transaction. The current balance in your account maintained with the bank is not reduced by the amount of the Card transaction until the transaction is presented to and paid by the bank. The balance available at the ATM is also reduced by the amount of the Card transaction. If the Card withdrawal is not presented within three (3) business days, we will release the hold and the available balance will be increased by the amount of the Card transaction. Whether you make a PIN based or a signature based Card transaction, the balance in your account available for the payment of checks and debits will be reduced by the amount of the Card transaction until the Card transaction is presented to us for payment. This means that if you make an inquiry on the available balance of your account through any method, the available balance will reflect the amount of the Card transaction until the Card transaction is presented to and paid by us. If the Card transaction is not presented within three (3) business days, we will release the hold and the available balance will be increased by the amount of the Card transaction.

Id., at 1.

4.18    For APPSN Transactions, for which necessary funds are immediately deducted from a positive account balance and held aside for payment of that same transaction, there are always funds to pay those transactions, yet Banner assesses OD Fees on them anyway. The above promise indicates that transactions are only overdraft transactions when they are authorized into a negative account balance. Of course, that is not true for APPSN Transactions.

CLASS ACTION COMPLAINT- Page 10

In fact, Banner actually authorizes transactions on positive funds, sets those funds aside on hold, then fails to use those same funds to "post" those same transactions. Instead, it uses a secret posting process described below.

4.19    The above contractual promise is untrue.  Banner charges OD Fees even when sufficient funds exist to cover transactions that are authorized into a positive balance. No express language in any document states that Banner may impose OD Fees on any APPSN Transactions. The account documents misconstrue Banner's true debit card processing and overdraft practices. First, and most fundamentally, Banner charges OD Fees on debit card transactions for which there are sufficient funds available to cover the transactions.

4.20    Banner assesses OD Fees on APPSN Transactions that *do* have sufficient funds available to pay them throughout their lifecycle.

4.21    Banner's practice of charging OD Fees even when sufficient available funds exist to pay a transaction violates a contractual promise not to do so. This discrepancy between Banner's actual practice and the contract causes consumers like Plaintiff to incur more OD Fees than they should.

4.22    Next, sufficient funds for APPSN Transactions are actually debited from the account immediately, consistent with standard industry practice.
This discrepancy between Banner's actual practices and the contract causes consumers to incur more OD Fees than they should.

4.23    In sum, there is a huge gap between Banner's practices as described in the account documents and Banner's practices in reality.

**D.    Banner Abuses Contractual Discretion**

4.24    Banner's treatment of debit card transactions to charge OD Fees is not simply a breach of the express terms of the numerous account documents. In addition, Banner exploits contractual discretion to the detriment of accountholders when it uses these policies.

CLASS ACTION COMPLAINT- Page 11

FRIEDMAN | RUBIN•
1109 FIRST AVENUE, SUITE 501
SEATTLE, WA  98101-3614
(206) 501-4446

4.25    Banner uses its discretion to define contract terms in a manner contrary to any reasonable, common sense understanding of those terms. In Banner's implied definition, a transaction is an overdraft transaction even if Banner sequesters sufficient available funds for that transaction at the time it is made.

4.26    Moreover, Banner uses its contractual discretion to cause APPSN Transactions to incur OD Fees by knowingly authorizing later transactions that it allows to consume available funds previously sequestered for APPSN Transactions.

4.27    Banner uses all of these contractual discretion points unfairly to extract OD Fees on transactions that no reasonable consumer would believe could cause OD Fees.

**E.    Plaintiff's Debit Card Transactions**

4.28    On numerous occasions, Plaintiff was assessed OD Fees on debit card transactions that settled on that day, despite the fact that positive funds were deducted immediately, prior to that day, for the transactions on which Plaintiff was assessed an OD Fee.

## V.    BANNER CHARGES TWO OR MORE FEES ON THE SAME ITEM

5.1    Banner regularly assesses two or more NSF Fees on the *same* item. This abusive practice is not universal in the financial services industry. Indeed, major banks like Chase—the largest consumer bank in the country—does not undertake the practice of charging more than one NSF Fee on the same item when it is reprocessed. Instead, Chase charges one NSF Fee even if a transaction is resubmitted for payment multiple times.

5.2    Banner's Account Documents never disclose this practice. To the contrary, Banner's Account Documents indicate it will only charge a single NSF Fee on an item.

### a.    Plaintiff's Experience

5.3    In support of her claims, Plaintiff offers an example of NSF Fees that should not have been assessed against her checking account. As alleged below, Banner: (a) reprocessed a previously declined item; and (b) charged a fee upon reprocessing.

5.4    In September 2020, Plaintiff attempted a single payment via ACH.

CLASS ACTION COMPLAINT- Page 12

5.5    Banner rejected payment of that item due to insufficient funds in Plaintiff's account and charged her a $30 NSF Fee for doing so. Plaintiff does not dispute the initial fee, as it is allowed by Banner Account Documents.

5.6    A few days later, Banner again rejected the payment, and charged a *second* $30 NSF Fee.

5.7    *In sum, Banner charged Plaintiff $60 in fees to attempt to process a single payment.*

5.8    Plaintiff understood the payment to be a single item as is laid out in Banner's Account Documents, capable at most of receiving a single NSF Fee (if Banner returned it) or a single OD Fee (if Banner paid it).

**b.    The Imposition of Multiple Fees on a Single Item Violates Banner's Express Promises and Representations**

5.9    The Account Documents provide the general terms of Plaintiff's relationship with Banner and therein Banner makes explicit promises and representations regarding how transactions will be processed, as well as when NSF Fees and OD Fees may be assessed.

5.10    The Account Documents contain explicit terms indicating that fees will only be assessed once per transaction or single item—defined as a customer request for payment or transfer—when in fact Banner regularly charges two or more fees per transaction or single item even though a customer only requested the payment or transfer once.

5.11    Banner's Account Documents indicate that a singular NSF Fee can be assessed on checks, ACH debits, and electronic payments.

5.12    Banner's Account Documents state that it will charge a single fee per item or transaction that is returned due to insufficient funds.

5.13    The same "item" cannot conceivably become a new one each time it is rejected for payment then reprocessed, especially when—as here—Plaintiff took no action to resubmit it. There is zero indication anywhere in the Account Documents that the same "item" or "transaction" is eligible to incur multiple NSF Fees.

CLASS ACTION COMPLAINT- Page 13

FRIEDMAN | RUBIN•
1109 FIRST AVENUE, SUITE 501
SEATTLE, WA 98101-3614
(206) 501-4446

5.14    The same "item" on an account cannot conceivably become a new "item" each time it is rejected for payment then reprocessed, especially when—as here—Plaintiff took no action to reprocess it.

5.15    There is zero indication anywhere in the Account Documents that the same "item" is eligible to incur multiple fees.

5.16    The Deposit Agreement, Exhibit A, states:

Overdraft or Returned Item (per item, based on available balance)
• Business Account   $35.00
• Consumer Account   $30.00

5.17    Even if Banner reprocesses an instruction for payment, it is still the same item. Banner's reprocessing is simply another attempt to effectuate an accountholder's original order or instruction.

5.18    The Account Documents described never discuss a circumstance where Banner may assess multiple NSF Fees for a single item that was returned for insufficient funds and later reprocessed one or more times and returned again.

5.19    In sum, Banner promises that one NSF Fee will be assessed per electronic payment or check, and these terms must mean all iterations of the same instruction for payment. As such, Banner breached the contract when it charged more than one fee per item.

5.20    Reasonable consumers understand any given authorization for payment to be one, singular "item" as that term is used in Banner's Account Documents.

5.21    Taken together, the representations and omissions identified above convey to customers that all submissions for payment of the same transaction will be treated as the same "item," which Banner will either authorize (resulting in an overdraft item) or reject (resulting in a returned item) when it decides there are insufficient funds in the account. Nowhere does Banner disclose that it will treat each reprocessing of a check or ACH payment as a separate item, subject to additional fees, nor have Banner customers ever agree to such fees or practices.

CLASS ACTION COMPLAINT- Page 14

5.22    Customers reasonably understand, based on the language of the Account Documents and Banner's other documents, that the Bank's reprocessing of checks or ACH payments are simply additional attempts to complete the original order or instruction for payment, and as such, will not trigger NSF Fees. In other words, it is always the same item or transaction.

5.23    Banks and credit unions, like Banner, that employ this abusive practice know how to plainly and clearly disclose it. Indeed, other banks and credit unions that do engage in this abusive practice disclose it expressly to their accountholders—something Banner never did here.

5.24    For example, First Hawaiian Bank engages in the same abusive practices as PCU, but at least currently discloses it in its online banking agreement, in all capital letters, as follows:

> YOU AGREE THAT MULTIPLE ATTEMPTS MAY BE MADE TO SUBMIT A RETURNED ITEM FOR PAYMENT AND THAT **MULTIPLE FEES MAY BE CHARGED TO YOU AS A RESULT OF A RETURNED ITEM AND RESUBMISSION**.

*Terms and Conditions of FHB Online Services*, First Hawaiian Bank 40, https://www. fhb.com/ en/assets/File/Home_Banking/FHB_Online/Terms_and_Conditions_of_FHB_Online_Services_ RXP1.pdf  (last accessed September 25, 2019) (emphasis added).

5.25    Klein Bank similarly states in its online banking agreement:

> [W]e will charge you an NSF/Overdraft Fee each time: (1) a Bill Payment (electronic or check) is submitted to us for payment from your Bill Payment Account when, at the time of posting, your Bill Payment Account is overdrawn, would be overdrawn if we paid the item (whether or not we in fact pay it) or does not have sufficient available funds; or (2) we return, reverse, or decline to pay an item for any other reason authorized by the terms and conditions governing your Bill Payment Account. **We will charge an NSF/Overdraft Fee as provided in this section regardless of the number of times an item is submitted or resubmitted to us for payment, and regardless of whether we pay the item or return, reverse, or decline to pay the bill payment.**

*Consumer and Small Business Online Access Agreement*, Klein Bank ¶ H, https://www.klein bankonline.com/bridge/disclosures/ib/disclose.html  (last accessed September 25, 2019) (emphasis added).

5.26    Central Pacific Bank, a leading bank in Hawai'i, states in its Fee Schedule under the "MULTIPLE NSF FEES" subsection:

> Items and transactions (such as, for example, checks and electronic transactions /payments) returned unpaid due to insufficient/non-sufficient ("NSF") funds in

CLASS ACTION COMPLAINT- Page 15

your account, may be resubmitted one or more times for payment, and a $32 fee will be imposed on you each time an item and transaction resubmitted for payment is returned due to insufficient/nonsufficient funds.

*Miscellaneous Fee Schedule*, Central Pacific Bank 1 (Feb. 15, 2019), https://www.centralpacific bank.com/PDFs/Miscellaneous-Fee-Schedule.aspx .

5.27    BP Credit Union likewise states: "We may charge a fee each time an item is submitted or resubmitted for payment; therefore, you may be assessed more than one fee as a result of a returned item and resubmission(s) of the returned item."

5.28    Regions Bank likewise states:

If an item is presented for payment on your account at a time when there is an insufficient balance of available funds in your account to pay the item in full, you agree to pay us our charge for items drawn against insufficient or unavailable funds, whether or not we pay the item. If any item is presented again after having previously been returned unpaid by us, you agree to pay this charge for each time the item is presented for payment and the balance of available funds in your account is insufficient to pay the item.

https://www.regions.com/virtualdocuments/Deposit_Agreement_6_1_2018.pdf .

5.29    First Financial Bank states, "Merchants or payees may present an item multiple times for payment if the initial or subsequent presentment is rejected due to insufficient funds or other reason (representment). Each presentment is considered an item and will be charged accordingly." Special Handling/Electronic Banking Disclosures of Charges, First Financial Bank 2 (Aug. 2018), https://www.bankatfirst.com/content/dam/first-financial-bank/eBanking_ Disclosure__of__Charges.pdf .

5.30    Andrews Federal Credit Union states:

You understand and agree that a merchant or other entity may make multiple attempts to resubmit a returned item for payment. Consequently, because we may charge a service fee for an NSF item each time it is presented, we may charge you more than one service fee for any given item. Therefore, multiple fees may be charged to you as a result of a returned item and resubmission regardless of the number of times an item is submitted or resubmitted to use for payment, and regardless of whether we pay the item or return, reverse, or decline to pay the item. When we charge a fee for NSF items, the charge reduces the available balance in your account and may put your account into (or further into) overdraft.

CLASS ACTION COMPLAINT- Page 16

FRIEDMAN | RUBIN•
1109 FIRST AVENUE, SUITE 501
SEATTLE, WA 98101-3614
(206) 501-4446

https://www.andrewsfcu.org/AndrewsFCU/media/Documents/Terms-and-Conditions_REBRANDED_Dec2019-Update.pdf

5.31    Consumers Credit Union states:

Consequently, because we may charge a service fee for an NSF item each time it is presented, we may charge you more than one service fee for any given item. Therefore, multiple fees may be charged to you as a result of a returned item and resubmission regardless of the number of times an item is submitted or resubmitted to us for payment, and regardless of whether we pay the item or return, reverse, or decline to pay the item.

https://www.myconsumers.org/docs/default-source/default-document-library/ccu_membership_booklet_complete.pdf?sfvrsn=6

5.32    Wright Patt Credit Union states:

Consequently, because we may charge a service fee for an NSF item each time it is presented, we may charge you more than one service fee for any given item. Therefore, multiple fees may be charged to you as a result of a returned item and represented regardless of the number of times an item is presented or represented to us for payment, and regardless of whether we pay the item or return, reverse, or decline to pay the item.

https://www.wpcu.coop/en-us/PDFDocuments/Important%20Account%20Information%20Disclosure%20-%20WPCU.pdf

5.33    Railroad & Industrial Federal Credit Union states:

Consequently, because we may charge an NSF fee for an NSF item each time it is presented, we may charge you more than one NSF fee for any given item. Therefore, multiple fees may be charged to you as a result of a returned item and resubmitted to us for payment, and regardless of whether we pay the item or return, reverse, or decline to pay the item.

https://www.rifcu.org/Documents/Disclosures/Account-Terms-Conditions.aspx

5.34    Partners 1st Federal Credit Union states:

Consequently, because we may charge a fee for an NSF item each time it is presented, we may charge you more than one fee for any given item. Therefore, multiple fees may be charged to you as a result of a returned item and resubmission regardless of the number of times an item is submitted or resubmitted to us for payment, and regardless of whether we pay the item or return, reverse, or decline to pay the item.

https://www.partners1stcu.org/uploads/page/Consumer_Account_Agreement.pdf

CLASS ACTION COMPLAINT- Page 17

5.35    Members First Credit Union states:

We reserve the right to charge an Non-Sufficient Funds Fee (NSF Fee) each time a transaction is presented if your account does not have sufficient funds to cover the transaction at the time of presentment and we decline the transaction for that reason. **This means that a transaction may incur more than one Non-Sufficient Funds Fee (NSF Fee) if it is presented more than once** . . . we reserve the right to charge a Non-Sufficient Funds (NSF Fee) for both the original presentment and the representment [.]

http://www.membersfirstfl.org/files/mfcufl/1/file/Membership_and_Account_Agreement.pdf

5.36    Community Bank, N.A. states:

We cannot dictate whether or not (or how many times) a merchant will submit a previously presented item. You may be charged more than one Overdraft or NSF Fee if a merchant submits a single transaction multiple times after it has been rejected or returned.

https://cbna.com/u/header/2019-Overdraft-and-Unavailable-Funds-Practices-Disclosure.pdf

5.37    RBC Bank states:

We may also charge against the Account an NSF fee for each item returned or rejected, including for multiple returns or rejections of the same item.

https://www.rbcbank.com/siteassets/Uploads/pdfs/Service-Agreement-for-Personal-Accounts.pdf

5.38    Diamond Lakes Credit Union states:

Your account may be subject to a fee for each item regardless of whether we pay or return the item. We may charge a fee each time an item is submitted or resubmited for payment; therefore, you may be assessed more than one fee as a result of a returned item and resubmission(s) of the returned item.

https://www.diamondlakesfcu.org/termsconditions.html

5.39    Parkside Credit Union states:

If the Credit Union returns the item, you will be assessed an NSF Fee. Note that the Credit Union has no control over how many times an intended payee may resubmit the same check or other item to us for payment. In the event the same check or other item is presented for payment on more than one occasion, your account will be subject to an additional charge on each occasion that the item is presented for payment. There is no limit to the total fees the Credit Union may charge you for overdrawing your account.

https://www.parksidecu.org/_/kcms-doc/1043/44277/Membership-and-Account-Agreement.pdf?__cf_chl_captcha_tk__=add6ebea42df3385074decd4b16c1f86a8369dc9-1580427763-0-

FRIEDMAN | RUBIN•
1109 FIRST AVENUE, SUITE 501
SEATTLE, WA 98101-3614
(206) 501-4446

AfXmB7FcyYTqzK9oMNbMSKM6k5fnKS5Xf-z7p3Tv-Pt951tDs7wM8yaa          IV06w718
t2nomyWR1Q8COwgpfgE07FJWZUeFkJN6lxbXDZG1SvidTWhYm9l85AbCd5afw2imyGdtdz
KhXl9bQ9TYkjOlTVM4w8OFJOtE3wVIHrEITnQnSfoR5mZxM5O0bu4f_FHoHiJj0XsjNkVo
Gblk0-lti6-gMn-Wcu_o87SGQW6dOUF2i6rHGiM_CkdI-ULanKI2NS3KlhkY      AuNatN9Jdw
r7Plc6oJozMbZQeczuO7VlbRnuCFD0tjzkw1lsnof7uaRvLRAkfKYi3wh0tUU1c_Y6N4aH1qN8
SPftOn8TYJHO7OoILvpMfamNTqv_djpbUl3GVA .

5.40    Banner provides no such disclosure, and in so doing, deceives its accountholders.

### c. The Imposition of Multiple Fees on a Single Transaction Breaches Banner's Duty of Good Faith and Fair Dealing

5.41    Parties to a contract are required not only to adhere to the express conditions in the contract, but also to act in good faith when they are invested with a discretionary power over the other party. This creates an implied promise to act in accordance with the parties' reasonable expectations and means that Banner is prohibited from exercising its discretion to enrich itself and gouge its customers. Indeed, Banner has a duty to honor transaction requests in a way that is fair to Plaintiff and its other customers and is prohibited from exercising its discretion to pile on ever greater penalties on the depositor.

5.42    Here—in the adhesion agreements Banner foisted on Plaintiff and its other customers—Banner has provided itself numerous discretionary powers affecting customers' credit union accounts. But instead of exercising that discretion in good faith and consistent with consumers' reasonable expectations, Banner abuses that discretion to take money out of consumers' account without their permission and contrary to their reasonable expectations that they will not be charged multiple fees for the same transaction.

5.43    Banner abuses the power it has over customers and their credit union accounts and acts contrary to reasonable expectations under the Account Documents when it construes the word "item" to mean each iteration of the same payment. This is a breach of Banner's implied covenant to engage in fair dealing and to act in good faith.

5.44    Further, Banner maintains complete discretion not to assess NSF Fees on transactions at all. By exercising its discretion in its own favor—and to the prejudice of Plaintiff and other customers—by charging more than one NSF Fee on a single item, Banner breaches the

FRIEDMAN | RUBIN•
1109 FIRST AVENUE, SUITE 501
SEATTLE, WA 98101-3614
(206) 501-4446

reasonable expectation of Plaintiff and other customers and in doing so violates the implied covenant to act in good faith.

5.45    It was bad faith and totally outside Plaintiff's reasonable expectations for Banner to use its discretion to assess two or more fees for a single attempted payment.

5.46    When Banner charges multiple fees, Banner uses its discretion to define the meaning of "item" in an unreasonable way that violates common sense and reasonable consumer expectations. Banner uses its contractual discretion to set the meaning of those terms to choose a meaning that directly causes more NSF Fees.

## VI.  FIRST CLAIM FOR RELIEF
### Breach of Contract and Breach of the Covenant of Good Faith and Fair Dealing
### (On Behalf of Plaintiff and the Classes)

6.1    The preceding allegations are incorporated by reference and re-alleged as if fully set forth herein.

6.2    Ms. Gonzalez and Banner have contracted for bank account deposit, checking, ACH, ATM, and debit card services. The contract also does not permit Banner to charge OD Fees on items that do not actually overdraw an account, or to assess more than one NSF Fee on the same item.

6.3    Thus, Banner breached the express terms of its contract with Ms. Gonzalez and the Class by charging OD Fees on items that do not actually overdraw the account, or to assess more than one NSF Fee on the same item.

6.4    Under the laws of Washington, good faith is an element of every contract pertaining to the assessment of OD or NSF Fees. Whether by common law or statute, all such contracts impose upon each party a duty of good faith and fair dealing. Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit – not merely the letter – of the bargain. Put differently, the parties to a contract are mutually obligated to comply with the substance of their contract in

CLASS ACTION COMPLAINT- Page 20

addition to its form. Evading the spirit of the bargain and abusing the power to specify terms constitute examples of bad faith in the performance of contracts.

6.5    Subterfuge and evasion violate the obligation of good faith in performance even when an actor believes his conduct to be justified. A failure to act in good faith may be overt or may consist of inaction, and fair dealing may require more than honesty. Examples of violations of good faith and fair dealing include evasion of the spirit of the bargain, willful rendering of imperfect performance, abuse of a power to specify terms, and interference with or failure to cooperate in the other party's performance.

6.6    Banner breached the covenant of good faith and fair dealing in its Account Agreement with customers by charging OD Fees on items that do not actually overdraw the account and by assessing more than one NSF Fee on the same item.

6.7    Ms. Gonzalez and members of the Class have performed all, or substantially all, of the obligations imposed on them under the contract.

6.8    Ms. Gonzalez and members of the Class have sustained damages as a result of Banner's breach of the contract.

## VII.  SECOND CLAIM FOR RELIEF
### Violations of Washington's Consumer Protection Act
### (On Behalf of Plaintiff and the Classes)

7.1    The preceding allegations are incorporated by reference and re-alleged as if fully set forth herein.

7.2    This claim is asserted on behalf of the Class of Banner customers who are Washington residents and enjoy the protections of Unfair Business Practices Act—Consumer Protection Act (CPA), RCW Chapter 19.86.

7.3    Plaintiff and members of the Class is "persons" within the meaning of RCW 19.86.010(1).

7.4    Banner is a "person" within the meaning of RCW 19.86.010(1).

CLASS ACTION COMPLAINT- Page 21

FRIEDMAN | RUBIN•
1109 FIRST AVENUE, SUITE 501
SEATTLE, WA  98101-3614
(206) 501-4446

7.5     Banner's common courses of conduct alleged above are unfair and deceptive and had, and continue to have, the capacity to deceive a substantial portion of the public.

7.6     Banner's common courses of unfair and deceptive conduct occur in trade or commerce and impact the public interest because Banner is in the business of providing financial services to tens of thousands of consumers in Washington. Thousands of Washingtonians have been and continue to be affected by Banner's unfair and deceptive acts and practices.

7.7     Banner's common courses of conduct caused injury to the business or property of Plaintiff and the Class.

7.8     Plaintiff and the Class have been damaged in amounts to be determined at trial and under RCW 19.86.090, Plaintiff and the Class is entitled to recover such damages, including interest thereon, as well as three times actual damages (up to $25,000.00), attorneys' fees and costs.

7.9     Under RCW 19.86.090, Plaintiff and the Class is also entitled to an order enjoining Banner from engaging in the illegal acts and practices described above.

7.10     Plaintiff and the Class is also entitled to additional equitable relief as the Court deems appropriate, including but not limited to disgorgement for the benefit of the Class of all or part of the ill-gotten gains Banner has received in connection with the acts described above.

## VIII.  THIRD CLAIM FOR RELIEF
### Violations of California Unfair Competition Law,
### Cal. Bus. & Prof. Code §17200, *et seq*.
### (On Behalf of Plaintiff and the California Classes Only)
### (Violation of Unfair Competition Law, Cal. Bus. & Prof. Code §17200, *et seq*.)

8.1     The preceding allegations are incorporated by reference and re-alleged as if fully set forth herein.

8.2     Banner's conduct described herein violates California's Unfair Competition Law (the "UCL"), codified as Business and Professions Code section 17200, et seq.  The UCL prohibits and provides civil remedies for unlawful and unfair competition.  Its purpose is to protect both

CLASS ACTION COMPLAINT- Page 22

consumers and competitors by promoting fair competition in commercial markets for goods and services.  In service of that purpose, the Legislature framed the UCL's substantive provisions in broad, sweeping language.  By defining unfair competition to include "any unlawful, unfair or fraudulent business act or practice," the UCL permits violations of other laws to be treated as unfair competition that is independently actionable, and sweeps within its scope acts and practices not specifically proscribed by any other law.

8.3    The UCL expressly provides for injunctive relief, and also contains provisions denoting its public purpose.  A claim for injunctive relief under the UCL is brought by a plaintiff acting in the capacity of a private attorney general.  Although the private litigant controls the litigation of an unfair competition claim, the private litigant is not entitled to recover compensatory damages for her own benefit, but only disgorgement of profits made by the defendant through unfair or deceptive practices in violation of the statutory scheme or restitution to victims of the unfair competition.

8.4    As further alleged herein, Banner's conduct violates the UCL's "unfair" prong insofar as Banner charges multiple NSF fees on a single item, charges overdraft fees when there was enough money in the account to cover a transaction, and charged fees that were not listed in either the Account Agreement or Fee Schedule, and also charged fees on transactions for which it previously already had sequestered aside money to cover and made unavailable for other purposes. Banner's conduct was not motivated by any legitimate business or economic need or rationale. The harm and adverse impact of Banner's conduct on members of the general public was neither outweighed nor justified by any legitimate reasons, justifications, or motives. The harm to Plaintiffs and Class Members arising from Banner's unfair practices relating to the imposition of the improper fees outweighs the utility, if any, of those practices.

8.5    Further, with regard to the APPN practice, Plaintiff alleges that conduct already has been found by the Consumer Financial Protection Bureau to be both "unfair" and deceptive:"

A financial institution authorized an electronic transaction, which reduced a customer's available balance but did not result in an overdraft at the time of

CLASS ACTION COMPLAINT- Page 23

authorization; settlement of a subsequent unrelated transaction that further lowered the customer's available balance and pushed the account into overdraft status; and when the original electronic transaction was later presented for settlement, because of the intervening transaction and overdraft fee, the electronic transaction also posted as an overdraft and an additional overdraft fee was charged. Because such fees caused harm to consumers, one or more supervised entities were found to have acted unfairly when they charged fees in the manner described above. Consumers likely had no reason to anticipate this practice, which was not appropriately disclosed. They therefore could not reasonably avoid incurring the overdraft fees charged. Consistent with the deception findings summarized above, examiners found that the failure to properly disclose the practice of charging overdraft fees in these circumstances was deceptive. At one or more institutions, examiners found deceptive practices relating to the disclosure of overdraft processing logic for electronic transactions. Examiners noted that these disclosures created a misimpression that the institutions would not charge an overdraft fee with respect to an electronic transaction if the authorization of the transaction did not push the customer's available balance into overdraft status. But the institutions assessed overdraft fees for electronic transactions in a manner inconsistent with the overall net impression created by the disclosures. Examiners therefore concluded that the disclosures were misleading or likely to mislead, and because such misimpressions could be material to a reasonable consumer's decision-making and actions, examiners found the practice to be deceptive. Furthermore, because consumers were substantially injured or likely to be so injured by overdraft fees assessed contrary to the overall net impression created by the disclosures (in a manner not outweighed by countervailing benefits to consumers or competition), and because consumers could not reasonably avoid the fees (given the misimpressions created by the disclosures), the practice of assessing fees under these circumstances was found to be unfair.

Consumer Financial Protection Bureau, Winter 2015 "Supervisory Highlights".

8.6    Banner's unfair business practices as alleged herein are immoral, unethical, oppressive, unscrupulous, unconscionable and/or substantially injurious to Plaintiffs and Class Members, and the general public. Banner's conduct was substantially injurious to consumers in that they have been forced to pay improper, abusive, and/or unconscionable NSF, overdraft, and other non-contracted fees.

8.7    As a result of Banner's violations of the UCL, Plaintiffs and Class Members have paid, and/or will pay improper NSF, overdraft, and other non-contracted fees in the future and thereby have suffered actual loss of money and may similarly suffer in the future if the

FRIEDMAN | RUBIN•
1109 FIRST AVENUE, SUITE 501
SEATTLE, WA 98101-3614
(206) 501-4446

1  misrepresentations allowed to continue. Absent injunctive relief forcing Banner to disgorge itself

2  of its ill-gotten gains and public injunctive relief prohibiting Banner from misrepresenting and

3  omitting material information concerning its NSF and overdraft fee policy and other fees policy at

4  issue in this action in the future, Plaintiff and other existing accountholders, and the general public,

5  will suffer from and be exposed to Banner's conduct violative of the UCL.

6  ## IX.  PRAYER FOR RELIEF

7      WHEREFORE, Ms. Gonzalez and members of the Class demand a jury trial on all claims

8  so triable and judgment as follows:

9      A.    Declaring Banner's OD Fee policies and practices to be wrongful, unfair and

10  unconscionable;

11      B.    Restitution of all OD Fees paid to Banner by Ms. Gonzalez and the Class on items

12  that did not actually overdraw an account i.e. when there were sufficient actual funds in the account

13  to cover the items;

14      C.    For each member of the Class, actual damages in an amount according to proof;

15      D.    Treble damages in accordance with Washington law;

16      E.    An injunction against Banner's OD and NSF Fee policies challenged herein;

17      F.    Pre-judgment and post-judgment interest at the maximum rate permitted by

18  applicable law;

19      G.    Costs and disbursements assessed by Ms. Gonzalez in connection with this action,

20  including reasonable attorneys' fees pursuant to applicable law; and

21      H.    Such other relief as this Court deems just and proper.

22

23

24

25

26

CLASS ACTION COMPLAINT- Page 25

FRIEDMAN | RUBIN•
1109 FIRST AVENUE, SUITE 501
SEATTLE, WA  98101-3614
(206) 501-4446

DATED this 14th day of October, 2020.

FRIEDMAN | RUBIN ®

By:  _____*s/Roger S. Davidheiser*_____
Roger S. Davidheiser, WSBA #18638
1109 First Avenue, Suite 501
Seattle, WA 98101
206.501.4446
rdavidheiser@friedmanrubin.com

*Attorneys for Plaintiff*

CLASS ACTION COMPLAINT- Page 26

FRIEDMAN | RUBIN•
1109 FIRST AVENUE, SUITE 501
SEATTLE, WA 98101-3614
(206) 501-4446